v. McDonald 161072 Mr. Walsh you want five minutes for rebuttal? Yes, Your Honor. Okay, you may begin. If it pleases the court, I'm Robert Walsh. Mr. Shields apologizes because of the nature of his injury. It's very difficult for him to travel. He had a fractured pelvis and he doesn't really get on well. Also, Mr. Cushman is listening today. He's been interested in this case and he's in ill health. And I wanted to say hello to him. Thanks to the court for bringing us on for oral argument. This case, as you notice, is pretty old. It's been going on for over a decade. It's a pretty complicated factual pattern, that's for sure. At the time, I'd been doing this work on veterans benefits down at the regional office level for 30 years. Now in 2008, as the court knows, the law changed and you could actually get paid for doing that work. So in my office, the largest recovery we ever had for a veteran ended up being pro bono publico because it was six months before the law changed. But in bringing these cases and in working down there, this sort of error, these notice failures, have been a persistent annoyance. And after we changed our address, they became more difficult. But since the institution of the veterans benefits management system, since the computer has taken over and pushed the human factor out, I think a lot of the workers knew what our addresses were and the system would go to print a label that was wrong, and I think they would override it. They're not anymore. And now, instead of having two of these a year, we're having two of these a week. Mr. Walsh, your gray brief was a bit of a tirade against the Veterans Administration, and don't get me wrong, I'm sure there are plenty of reasons for complaint. Having said that, most of what you talk about in that gray brief doesn't have anything to do with this case. And, you know, we are not Congress, we're not the Veterans Administration, we're not even the executive. So we have to look at the facts of this case. We have the cards that we have been dealt, yes, ma'am. Right. And we have a factual question. Well, but the question also is, our council, our veterans, our veterans' representatives entitled to actual notice each and every time. I'm sorry. It's mulling for application. Veterans' representatives. I thought that at the important time here, in the 2003-2004 time frame, your client notified the VA that his former representative, American Legion. He severed his relationship. Severed his relationship. So that notice here that had to be given was noticed only to him. And the regulation, I think, says that it's supposed to be sent to the address of record. And the factual finding here is we don't have any reason to think it wasn't. And if, indeed, it was sent to the address of record and the VA didn't receive notice that that address was defective, because in this instance, unlike others, it didn't get the mail returned, what as a constitutional matter is defective about that notice? On a similar fact pattern, I had a client who was also a friend, and in the claims file, just as I discovered this statement of the case, I discovered a rating. This isn't in the record, is it? A rating. So I called Detroit, and they said, oh, the rating is in the file, but we never mailed it. The worker agreed. But that's not in the record before, is it? No, but it's analogous to this. Your problem, I think, Mr. Walsh, is our standard of review. This is absolutely a question of, again, it goes to the credibility of the veteran, but then when you look at the mangled and tortured record on beyond that, all the failures of notice, that the agency agrees. My friends agree, the other ones. Yes, you point to sloppiness. And where there was sloppiness after the relevant point in time here, they fixed it and sent it back, right? Several times. But in this particular case, we have a mailing that, on its face, went to the address of record that was provided, and there is a presumption that when you have a reference to the mailing and it's clear that the mailing occurred, that there was a presumption of regularity with respect to that mailing. And we have no evidence that it didn't go to that address. Well, I'm saying, and I think, I hope, I'm crystal clear. I think the presumption with the Veterans Benefits Administration, at this moment in time, saddled with their COBOL and all their problems, with their eight databases not talking to each other, I think it's a presumption of irregularity. I think it's a presumption that, and what's the cure here? You know, Mr. Shields lost 14 years. He never got to his merits argument. All I'm saying is what was practice, and what practice was in this class of cases is we would get in touch with the regional office and we would go over it, and most of the time they would reissue the document and restart the clock. And I think in a non-adversarial system, I don't think that's an unreasonable fix. The veteran would have lost a year, you know, proceeding with his merits. And Mr. Shields has had relief. He's at 90%. He's getting paid at 100% now. But the one issue he wanted to adjudicate and litigate was his earlier effective claim, his vigil claim. He hasn't been able to get to that. So what you want us to do is to basically wipe out any presumption of irregularity or the mailing rule and impose an alternative mailing rule for all VA activity. Well, in this type of situation, because the man has testified under oath several times that he didn't get it. He didn't receive it. But we have a factual determination that he did. That's our problem. I mean, we have a standard of review. But then we have a pattern of conduct here. We used to say out in the desert, this is a goat rope. I mean, and I'll say another thing here. There's a chilling effect by this class of cases. And now I'm getting two of these a week. I'm not getting, this is not now once a year or twice a year. The VBMS system is dysfunctional. And it's a Chernobyl. And I can't fix it. The Secretary's trying to fix it. He told us at the court conference that before he leaves office, he's going to get rid of COBOL. COBOL was invented, as you saw in the brief, about a mile away from my office by Grace Hopper. It's old enough to collect Social Security. And it's still putting the address labels on our mail here. And we're all in the same canoe going over Niagara Falls. But this was the first. I brought this case on. And I'm paying for it, not the client. We brought this case on because this is a whole class of case that has now become pandemic. And you're going to have, this was the first drop in Noah's Flood. But we're in a monsoon now. And in a year or two, you're going to have a hundred of these. Can I ask you a question? What do you think that we ought to rule here? That when a veteran says, hey, I didn't get it, you know. What? I'm sorry. Was it October of 2004 that he filed his notice of withdrawal? Well, but I did. I wrote to the regional office. And I also filed a VA-9. And I said, look. And they could have accepted that. Sometimes they would accept it, a late filing with the circumstances. But in this case, they came back. And they said, no, absolutely not. We're not going to. And we went on with it. Did you have an opportunity at that time to request an extension of the due date? Well, you know, that was the point with, of course, we didn't have oral argument. But Judge Hagel, he says, look. He says, look. These veterans, and there's tens of thousands of them now. I'm warning you. The system is out of control. I know. But as Judge O'Malley said, we don't do mass regulations. Right. But for this man, how could he ask for an extension when he didn't discover the statement of the case with a 60-day time limit on it until a year later when I got the claims file? I thought that the regulation allows for good cause extensions to be sought even after the time has run.  Am I wrong with that? Well, we did, I think, effectively, we did ask for the clock to restart. And, you know, we got a snippy response from the regional office saying, no, we're not going to do it. Whereas it's discretionary. It's totally within the discretion of the, there's no guidance. It's in with the discretion of the staff. And some staffers will reissue and restart the clock and some tell us no. And this is one where they, unfortunately, they told us no. This veteran, when I, shortly before this time, had been homeless, I mean, he was having a lot of problems. But I. All right, you're into your rebuttal time. You want to save it? All right.  Good morning. May it please the court. Mr. Shields' appeal in this case revolves entirely around his disagreement with the way the Veterans Court weighed the evidence regarding his receipt of the October 2003 statement of the case. And specifically, the application of the presumption of regularity. Let's just talk about some big picture issues. Obviously, Mr. Walsh is very frustrated. I mean, what these lawyers do, I think, is God's work. And we've got a lot of veterans out there. Many of whom are homeless. Many of whom do move around. Many of whom are not educated. Why shouldn't we have a rule that says if the veteran says I didn't get it, that be given all the bad problems that the VA has with mailing, that that ought to be the presumption instead of the presumption of regularity. Your Honor, I'm sure one could make the argument that Congress, or perhaps the VA itself as a matter of regulation, could change the presumption of regularity in some way. But the reality is that is not the law. And it's important to put this in context also. We have a VA system where literally millions of notices and other documents are mailed out by the VA each year. And so this presumption of regularity serves an important policy purpose, which is to assume that these millions of pieces of mail are in fact sent to the address that's noted on the face of the document. If you didn't have this presumption of regularity, presumably, you would have a potential situation where any number of claimants who maybe missed a deadline would be able to easily raise an argument, oh, I didn't get it. But I mean, Mr. Walsh's point is that he has familiarity with more than a few of those many millions of mailings. And he can tell you that most of the ones that he deals with are wrong. Yes, Your Honor. And in this particular case, we have evidence that there were several mailing mistakes. Your Honor, it's correct that Mr. Walsh has said that in his reply brief. As Judge Wallach noted, none of that is in the record. It doesn't relate to the claim in this case. In this case, it is correct that several years later, in 2008, there was another statement of the case that was issued by the regional office that did not have the correct address on it. At that point in time, Mr. Shields had attempted to change his address from the PO box that was used for the critical October 2003 statement of the case to something else. But the important point there is the board recognized that error, corrected it, remanded it back to the regional office and directed the regional office to reissue that statement of the case, which it did, which Mr. Shields then appealed, which led to the very appeal that's before this court now. So the point is that's an excellent example of how the board can properly apply the presumption of regularity with respect to that document. It recognized there was an issue, so it didn't apply any presumption. It remanded it, ordered it to be reissued. Can you just clarify for me what I don't really remember? When Mr. Shields filed in October of 2004, I guess the notice of appeal, is it? Or whatever the form is. I forget the form. The VA-9. Right. Can you explain, did he ask there for a good cause extension under the statute and, I guess, regulation? And if not, tell me that. If so, what was the response to it? I don't remember the details of that. Your Honor, Mr. Shields had the opportunity under the VA's regulations. It's 38 CFR section 3.109B. He could have filed a motion or made a request to enlarge the deadline to file the substantive appeal following his receipt of that statement of the case. And that deadline can be extended for good cause shown even after the deadline has passed. He would have made that motion to the regional office? To the board. To the board. No, his substantive appeal contained no such request. In fact, the board itself noted, and this is at page 98 of the appendix in the board's decision, it noted that no request for an extension was included in his October 2004 substantive appeal. So, again, Your Honor. And after the board said that, when did the board say no such request was? The board's decision was in March of 2014. Oh, but did it say at the time back in, you know, closer in time to October of 2004, you have not requested an extension? No, Your Honor. There was no discussion of that prior to the board's actual decision. So that's an excellent example of how under the regulations, as a procedural matter, Mr. Shields had the opportunity to make an argument at the time to request additional time if he thought he had a basis for doing so, and no such request was made. And getting back to the issue of the October 2003 statement of the case, the board found, as a matter of fact, that it was properly addressed, and there is no dispute here, that address on that document, Mr. Shields' PO Box, was his current address as of that time. He had no representative at that point in time. There's no indication in the file that that document was ever returned to the VA, suggesting it was undeliverable. So as a matter of fact, the board and then the Veterans Court found that the presumption of regularity applied here. There was nothing to rebut it other than Mr. Shields' statement that he didn't recall receiving that document. But Mr. Shields has not pointed to any case, and we have not found one either, from either the Veterans Court or this court, where any court has held that the presumption of regularity with respect to VA mailing procedures has sufficiently been rebutted simply by a claimant saying, I don't remember receiving the document. In the few cases where it has been rebutted, there's always been some other indicia in the claim file itself to suggest that there was a problem with the mailings contemporaneous with the one in question, and there's nothing in this file from the October 2003 time period to suggest that there was anything going wrong with the mailings at that time. Unless the court has any further questions? I have a comment. I understand Mr. Walsh's frustration in his argument, and I understand your legal argument, which I've raised to him, and that is this is a factual question, and there's a presumption as a matter of law. But I think his underlying concern is articulated by the requirement that the VA act in a veteran-friendly fashion, and there's a reason for that. Society owes a debt, and Congress has set up this system to pay that debt. And the debt is incurred not because somebody's the wounded or the widow or the orphan, the language on the front of the VA office, but more because persons, civilians, are taken and put into a system which is designed to create soldiers or sailors or Marines or air personnel, people who fight. And everybody has to be, everybody in the service has to be able to fight. And as a consequence, not only combat, but training, in this case jumping out of airplanes, is, as the Army says, designed to train as you fight, and in consequence to put those people through both physical and mental stress. And so you have a body of people out there who have been taken out of civilian life and stressed, both physically and mentally. And the quid pro quo from society for doing that is the existence of the veteran-friendly system. And it's not our role, it's a legislative role to correct the underlying presumptions and burdens, that is, legal burdens. In this case, the review of questions of fact. And we can't do it, but I think it's fair to Mr. Walsh to recognize that he's dealing with a system which should be friendly, and it doesn't look friendly from the things he's saying. So I'm just saying that. Thank you. You don't have to respond. You don't have to respond. Thank you, Your Honor. We would ask that the Court affirm the Veterans Court's decision. Very briefly, if it pleases the Court, you know, there are about 21 million veterans right now. The Veterans Bar is intimate. It's about 4,000. And most of us aren't barristers. We're solicitors. You know, we work in small towns and small offices. I have a legal assistant. She's a great young gal. She's got two master's degrees. And she estimates now she's spending 60% of her time chasing ghosts, trying to get missing documents. We have the Rumsfeld problem. I mean, we're a law office. We're not a Veterans Service Officer being paid by Congress and chartered by Congress that has no immunity because if they screw up, the secretary says, well, they're not our agent, and you have no recourse. I'm a licensed attorney in the District of Columbia in the state of Michigan. I have two grievance panels to worry about, and I have the courts and malpractice actions. And we're just this practice is becoming untenable with all these missing documents. And there has to be a solution. And if what we're getting from the agency is, well, presumption of regularity, take a hike, and then I start getting service of process for the complaints because my veteran says, well, presumption of regularity, you got that, and you didn't respond and timely file my appeal, and you didn't appear at my hearing. I appeared at a hearing at the regional office a few days ago, and I was supposed to have one client, and I had three. The next week I come down, I'm supposed to have two clients. I have one because my Marine with four purple hearts didn't get his notice of his hearing. And we knew we should have called him, and I told the secretary, you didn't call him. And she said, I didn't call him because we're just not getting notice. This system is broken. And this is not a backlog issue. This is a systemic process issue, and I'm saying that we need to craft a remedy or we're going to lose our bar here because the liability is just outrageous. Can't do it. Thank you. All right, thank you, Mr. Walsh, for your pro bono work on behalf of the veterans. It's an honor to the profession. All right, the case will be submitted.